Paper No. 39
Filed July 13, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————————

BEFORE THE PATENT TRIAL AND APPEAL
BOARD

————————————————

SQUARE, INC.
Petitioner

v.

J. CARL COOPER
Patent Owner

————————————————

Case IPR2014-00156
Patent No. 6,764,005

————————————————

**NOTICE OF APPEAL TO THE FEDERAL CIRCUIT (35 U.S.C. § 141(c))**

To: Office of the General Counsel
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Patent Owner hereby provides notice of appeal to the US Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141 and 142 from the final written decision of the Patent Trial and Appeal Board dated May 14, 2015.

Pursuant to 37 C.F.R. § 90.2(a)(3)(ii) the expected issues on appeal will include

1.   Whether *Inter Partes* Review proceedings (namely IPR2014-00156) violate the United States Constitution, Article III, based on the Separation of Powers doctrine, as well as Patent Owner's Seventh Amendment right to a jury trial on adjudications of patent validity.

2.   Whether Petitioner has shown by a preponderance of the evidence that claims 1-6 of U.S. Patent No. 6,764,005 are unpatentable.

Patent Owner has electronically filed this notice with the Patent Trial and Appeal Board, pursuant to 37 C.F.R. § 90.2(a)(1), 37 C.F.R. § 42.6(b)(1) and Federal Circuit Rule 15(a)(1).

Simultaneously herewith, patent owner is providing the Federal Circuit an electronic copy of the present Notice of Appeal (pursuant to 37 C.F.R. § 90.2(a)(2)(i) and 15(a)(1)) together with a $500 fee (pursuant to 37 C.F.R. § 90.2(a)(2)(ii) and Federal Circuit Rule 52(a)(3)(A)).

All copies include a copy of the final written decision.

Date: July 13, 2015                     Respectfully submitted,

*/Robert P. Greenspoon/*

Robert P. Greenspoon
Reg. No. 40,004
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., Suite 2700
Chicago, IL 60601
Phone:  312-551-9500
Fax:  312-551-9501
Email:  rpg@fg-law.com

**Counsel Patent Owner J. Carl Cooper
and Exclusive Licensee eCharge Licensing
LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing NOTICE OF APPEAL TO THE FEDERAL CIRCUIT (35 U.S.C. § 141(c)) was filed on July 13, 2015 with the United States Patent & Trademark Office, and served electronically on July 13, 2015 on the following counsel of record for Petitioner at the below-listed email address:

> Erika Arner
> Aaron Capron
> Finnegan, Henderson, Farabow,
>  Garrett & Dunner, LLP
> email: Square_v_eCharge_IPR@finnegan.com

Date:  July 13, 2015                    By:   */Robert P. Greenspoon/*
                                        Robert Greenspoon
                                        Reg. No. 40,004

                                        **Flachsbart & Greenspoon, LLC**

Trials@uspto.gov
Tel: 571-272-7822

Paper 38
Entered: May 14, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

SQUARE, INC.,
Petitioner

v.

J. CARL COOPER,
Patent Owner.

————————

Case IPR2014-00156
Patent 6,764,005 B2

————————

Before JAMESON LEE, GEORGE R. HOSKINS, and
KRISTINA M. KALAN, *Administrative Patent Judges.*

KALAN*, Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2014-00156
Patent 6,764,005 B2

# I.     INTRODUCTION

## A.  Background

Square, Inc. ("Petitioner") filed a Petition to institute an *inter partes* review of claims 1–6 of U.S. Patent No. 6,764,005 B2 (Ex. 1001, "the '005 patent").  Paper 1 ("Pet.").  J. Carl Cooper ("Patent Owner") filed a Preliminary Response.  Paper 8 ("Prelim. Resp.").  We instituted trial on Petitioner's asserted ground that claims 1–6 are unpatentable as anticipated by Pitroda.[1]  Paper 9 ("Dec.").

During trial, Patent Owner filed a Patent Owner Response (Paper 19, "PO Resp."), which was accompanied by a Declaration from J. Carl Cooper (Ex. 2004).  Petitioner filed a Reply to the Patent Owner Response. Paper 21 ("Pet. Reply").  A consolidated oral hearing for IPR2014-00156 and IPR2014-00157, each involving the same Petitioner and Patent Owner, was held on January 9, 2015.  A transcript of the consolidated hearing has been entered into the record.  Paper 37 ("Tr.").

We have jurisdiction under 35 U.S.C. § 6.  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. We determine that Petitioner has shown by a preponderance of the evidence that claims 1–6 of the '005 patent are unpatentable.  Patent Owner's Motion to Exclude (Paper 23) is dismissed-in-part and denied-in-part.

## B.  Related Proceedings

Petitioner represents that the '005 patent is the subject of pending lawsuits (1) in the Northern District of Illinois (filed by eCharge Licensing LLC against Petitioner, No. 1:13-cv-06445), Ex. 1003; and (2) in the District

---

[1] U.S. Patent No. 5,590,038, issued Dec. 31, 1996 (Ex. 1004).

IPR2014-00156
Patent 6,764,005 B2

of Massachusetts (filed by SCVNGR, Inc. against eCharge Licensing LLC, No. 1:13-cv-12418).  Pet. 5–6.

### C. The '005 Patent

The '005 patent "relates to the use of devices having information or patterns carried in or on some storage media, examples of which include photographic patterns, keys or the magnetic strip on credit cards."  Ex. 1001, 1:15–18.  Figure 2 of the '005 patent is reproduced below:



Figure 2 is a diagram of the preferred embodiment of the '005 patent's invention, dubbed a multi-card by the inventor, having plastic substrate 3, on which programmable magnetic strip 4, LCD display 5, solar cell power source 6, infrared emitter 7, infrared sensor 8, and key pad 9 are mounted suitably.  *Id.* at 2:51–57.

IPR2014-00156
Patent 6,764,005 B2

Figure 3 of the '005 patent is reproduced below:



Figure 3 is a drawing explaining the operation of the preferred embodiment. *Id*. at 2:29–30. Figure 3 "includes a console comprised of programming circuitry 16 and card reader 17." *Id*. at 5:51–52. According to the Specification: "Control circuit [11] operates interactively with the input/output interface 14, examples including those associated with 7 and 8 of FIG. 2, to communicate with the console." *Id*. at 5:38–40.

*D. Illustrative Claims*

Of the challenged claims, claims 1 and 5 are independent. As to the remaining challenged claims, claims 2–4, directly or indirectly, depend from claim 1, and claim 6 depends from claim 5. Claims 1 and 5 are reproduced below:

> 1. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:
> a carrier having a planar surface;
> a memory affixed to said carrier, for storing account data including account information for at least one account;

an emitter affixed to said carrier and programmed with account identifier information for transmitting account identifying information to said host system;

a receiver affixed to said carrier for receiving account data including account information from said host system;

a display affixed to said carrier for selectively displaying account information;

a control circuit affixed to said carrier and coupled to each of said memory, said display and said receiver, said control circuit causing account data including account information received by said receiver from the host system to be stored in said memory and causing said account information stored in said memory to appear on said display; and

a power source affixed to said carrier and coupled to at least one of said memory, said receiver, said emitter, said display and said control circuit;

whereby, the use of the credit card on the host system allows the emitter to identify an account to the host system, the receiver to receive the particular account data including account information from the host system, the control circuit to cause the particular account data including account information to be stored in the memory and to cause said account information, consisting of all or a portion of said account data, to appear on the display.

Ex. 1001, 9:62–10:27.

5. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:

substrate means to provide support for components of said apparatus;

display means for presentation of said information, affixed to said substrate means;

emitter means for transmission of said account data including account information to the host system, affixed to said substrate means;

receiver means for receipt of said account data including account information from the host system, affixed to said substrate means;

memory means for storing at least one said account data including account information and upon activation recalling for display or transmission said account data including account information;

operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and display of said account data including account information, to and from the host system, into and from said memory means and on said display means, said operator interface means being affixed to said substrate means;

control circuit means for responding to said operator interface means by activating and driving the display means, interacting with the emitter means, interacting with the receiver means, and interacting with the memory means, said control circuit means being affixed to said substrate means and electrically connected to said memory means, said display means, said emitter means, said receiver means and said operator interface means;

power source means for providing electrical power said power source means being affixed to said substrate means and electrically connected to at least one of said control circuit means, said operator interface means, said emitter means, said receiver means, said memory means and said display means;

whereby, when the credit card is coupled to a host account system, selected account data including account information stored in memory on the card can be transmitted to the host account system, selected account data including account information on the host account system can be transmitted to and received by the card and stored in memory and selected account information received from the host system or stored on the card memory can be selectively displayed for the user of the card.

Ex. 1001, 10:52–12:14.

IPR2014-00156
Patent 6,764,005 B2

## II.    ANALYSIS

For the challenged claims, Petitioner must prove unpatentability by a preponderance of the evidence. 35 U.S.C. § 316(e). We begin with a claim construction analysis, and then follow with specific analysis of the prior art.

### A.  Claim Construction

The parties agree that '005 patent expired on November 4, 2014, subsequent to the institution of trial in this proceeding. *See* Paper 16, 1. We construe expired patent claims according to the standard applied by the district courts. *See In re Rambus, Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012). Specifically, we apply the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17). Only those terms which are in controversy need to be construed, and only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In the Decision to Institute, we interpreted the term "emitter" as a device that transmits a signal conveying information to another device, and that is recognizable to one of ordinary skill in the art as an emitter. Dec. 10–11. We confirmed that applying the *Phillips* standard did not change this construction, in our Order dated June 23, 2014. Paper 18, 2–3. Patent Owner provides additional discussion in its Response to support its contention that the claim term "emitter" connotes a wireless transmission, arguing that the claimed emitter "is always 'transmitting' (claim 1) or for

IPR2014-00156
Patent 6,764,005 B2

'transmissions' (claim 5)."  PO Resp. 5.  Patent Owner argues that the
definition of "emit" as would be understood by one of ordinary skill in the
art at the time of the invention is "to send something out into the air,
especially gas, light or heat."  *Id.* at 5–6 (citing
http://www.macmillandictionary.com/dictionary/american/emit).  Patent
Owner concludes that this "locks down the specific sense intended by [the
inventor] Mr. Cooper:  something that sends out over the air," and thus, "Mr.
Cooper chose a wireless sense of emitter for his claims."  *Id.* (citing Ex.
2004 ¶¶ 50–56, 80–86).  Petitioner challenges Patent Owner's definition of
the term "emit," given that the term at issue is "emitter," and states that the
overwhelming evidence supports the Board's construction of "emitter."  Pet.
Reply 2–5.

    The language of claim 1 provides for "an emitter . . . for transmitting,"
and Patent Owner has not supplied a basis for its assertion that the emitter of
claim 1 is "always transmitting."  Claim 5 provides for "emitter means for
transmission."  The Specification provides that "[e]mitter 7 may be the
preferred infrared LED, antenna, coil, transducer, or *any other device*
capable of conveying information or patterns from the invention or outside
devices."  Ex. 1001, 5:11–14 (emphasis added).  Given the foregoing, we are
unpersuaded by Patent Owner's argument that an emitter connotes a wireless
transmission.  We see no reason based on the complete record now before us
to alter the construction from the Decision to Institute, and maintain the
construction for this Final Written Decision.

    In the Decision to Institute, we also construed the term "host system"
as "a system that receives account data from, and provides account data to, a
credit card" as well as various terms reciting "means."  Dec. 8–10.  Neither

IPR2014-00156
Patent 6,764,005 B2

party now proposes a different construction of these terms. Regarding the "means" terms, Petitioner in its Petition proposed that the several terms containing "means" in claims 5 and 6 do not qualify as terms under 36 U.S.C. § 112, sixth paragraph.[2]  Pet. 8–10.  We determined that the various "means" terms of claim 5 and 6 were not means-plus-function elements under § 112, ¶ 6, but were elements defined by the structure of the various words preceding each such means.  Dec. 9–10.  We maintain this construction for the purposes of the Final Written Decision and particularly for our discussion of the "emitter means," "control circuit means," and "operator interface means" of claim 5 and the "account identifier means" of claim 6, *infra*.

Based on the complete record now before us, we see no reason to alter our earlier constructions, and maintain the constructions for this Final Written Decision.

### B. Anticipation by Pitroda

We have reviewed the Petition, the Patent Owner Response, and Petitioner's Reply, as well as the relevant evidence discussed in those papers.  The parties focus their arguments on several terms present in certain claims of the '005 patent, namely, (1) in claims 1 and 5, the terms (a) "emitter" and (b) "control circuit;" (2) in claims 2 and 5, the terms "operator interface" and "account location"; and (3) in claim 6, the term "account identifier means."  We address these arguments in turn.

---

[2] Section 4(c) of the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011) ("AIA") re-designated 35 U.S.C. § 112, ¶ 6, as 35 U.S.C. § 112(f).  Because the '005 patent has a filing date prior to September 16, 2012, the effective date of § 4(c) of the AIA, we refer to the pre-AIA version of 35 U.S.C. § 112.

IPR2014-00156
Patent 6,764,005 B2

With respect to the independent claims, Pitroda teaches a universal electronic transaction card ("UET card" or "UETC"). Ex. 1004, Abst. Figure 3 of Pitroda is reproduced below:



**FIG. 3**

Figure 3 shows a block diagram of one embodiment of the UET card. *Id.* at 8:28–29. The UET card has "a micro controller with associated RAM/ROM and Input/Output port management 33," as well as non-volatile RAM 34. *Id.* at 11:20–21. The UET card further includes LCD and touch screen display 30, wherein the touch screen portion of display 30 is large enough to enable a user to operate touch controls. *Id.* at 11:14–19.

    *1. Claims 1 and 5*

        *a. Emitter*

Claim 1 requires "an emitter affixed to said carrier and programmed with account identifier information for transmitting account identifying information to said host system." Claim 5 requires "emitter means for

IPR2014-00156
Patent 6,764,005 B2

transmission of said account data including account information to the host system, affixed to said substrate means." As is relevant here, Petitioner argues that Pitroda discloses an emitter, namely, pin contacts 13 or 38, or infrared (IR) or radio frequency (RF) option 39. Pet. 14; Ex. 1004, Fig. 3, element 38 (pins contact), element 39 (IR or RF option).

Patent Owner argues that the "emitter" limitation in claims 1 and 5 is not met by Pitroda. PO Resp. 6–10. As discussed in Section II.A, *supra,* Patent Owner argues that the claimed emitter "is always 'transmitting' (claim 1) or for 'transmissions' (claim 5)." *Id.* at 5. Relying on the definition of "emit" as "to send something out into the air, especially gas, light or heat" (citing http://www.macmillandictionary.com/dictionary/american/emit), Patent Owner concludes that this "locks down the specific sense intended by [the inventor] Mr. Cooper: something that sends out over the air," and thus "Mr. Cooper chose a wireless sense of emitter for his claims." *Id*. at 5–6 (citing Ex. 2004 ¶¶ 50–56, 80–86). Patent Owner, thus, concludes that metal contacts 38 of Pitroda are "not a permissible 'emitter' under the proper construction of claims 1 and 5." *Id*. at 9.

Having argued that the inventor intended the emitter limitation to be wireless, Patent Owner further argues that, because Pitroda does not disclose what structure the IR/RF communication would use or what information it communicates, Pitroda does not disclose explicitly wireless transmission to or from the UET card of account data or account identifying information. *Id.* at 6–9. Patent Owner also states that nothing in Pitroda inherently discloses wireless transmission to or from the UET card of account data or account identifying information. *Id.* at 9. In sum, Patent Owner argues that "pin contacts 13 or 38 cannot qualify [as the emitter] because they are not

11

IPR2014-00156
Patent 6,764,005 B2

wireless.  And, the IR/RF option cannot qualify because Pitroda does not
specify what data might travel that way." *Id.* at 10 n.3.

Petitioner counters that the Specification describes an emitter broadly
enough to encompass both wired and wireless communication means.  Pet.
Reply 3 (citing Ex. 1001, 5:11–14) ("Emitter 7 may be the preferred infrared
LED, antenna, coil, transducer, or any other device capable of conveying
information or patterns from the invention or outside devices").  Petitioner
further argues that during Mr. Cooper's deposition, in response to the
question of whether, in general, "transmission of information, does that
include wired and wireless communication?", Mr. Cooper responded,
"Yeah, information can be transmitted by wires or wirelessly." *Id.* (citing
Ex. 1011, 212:16–22).  Petitioner points out that the claim language does not
limit emitters to wireless emitters only. *Id.* at 3–4.

With respect to Pitroda's disclosure of an emitter, Petitioner argues
that Pitroda's metal contacts embodiment satisfies the claimed emitter
limitation, and that Pitroda's IR/RF option embodiment also satisfies the
claimed emitter limitation. *Id.* at 6–8.  To support the former contention,
Petitioner points to Patent Owner's concession that Pitroda's metal contacts
transmit credit card information to outside devices like the communication
interface unit ("CIU"). *Id*. at 6 (citing PO Resp. 9).  To support the latter
contention, Petitioner relies on its expert's testimony that Pitroda's IR/RF
option can be used to transmit account data to the CIU and is programmed
with account data. *Id.* at 7–8 (citing Ex. 1008 §§ VII.A.1, VII.A.5).

We are persuaded that the Specification, including the claim language,
supports the use of metal contacts as emitters.  As provided in the
Specification, the emitter may be "any other device capable of conveying

IPR2014-00156
Patent 6,764,005 B2

information or patterns from the invention to outside devices." Ex. 1001, 5:12–14. The metal contacts of Pitroda transmit credit card information outside of the UET card. Ex. 1004, 16:35–41; PO Resp. 9 ("the only complete disclosure of any credit card information being transmitted outside the unit exists at Ex. 1004, 16:35–41").

We also are persuaded that the IR/RF option of Pitroda is an emitter. Patent Owner acknowledges that Pitroda discloses that its UET card transmits information. PO Resp. 9. Pitroda's IR/RF option is provided as an alternative means of communication of the information required to be communicated by the UET card to the CIU. *See* Ex. 1004, 9:55–59 (the CIU "interfaces with the UET card either through physical metallic contact— preferred for the touch memory devices—or infra red or radio frequency [IR/RF] based wireless transmit and receive units"); 9:59–63 ("The CIU includes means for receiving data from the UET card, such as metal contacts to connect to the metal contacts 13 of the UET card, or infrared or radio frequency [IR/RF] based wireless systems, depending on the system used by the UET card."). The use of either metal contacts option or IR/RF option as an emitter is disclosed explicitly in Pitroda, and not merely a possibility or probability.

*b. Control Circuit*

Claim 1 requires "a control circuit affixed to said carrier and coupled to each of said memory, said display and said receiver, said control circuit causing account data including account information received by said receiver from the host system to be stored in said memory and causing said account information stored in said memory to appear on said display." Claim 5 requires "control circuit means for responding to said operator

13

IPR2014-00156
Patent 6,764,005 B2

interface means by activating and driving the display means, interacting with the emitter means, interacting with the receiver means, and interacting with the memory means, said control circuit means being affixed to said substrate means and electrically connected to said memory means, said display means, said emitter means, said receiver means and said operator interface means."

Petitioner contends that the claimed control circuit reads on Pitroda's microcontroller on the UET card, as shown in Figure 3, which microcontroller is coupled to the memory (RAM, ROM or non-volatile RAM 34), the display (LCD display portion of LCD and touch screen display 30), and the receiver (IR or RF option 39, or pin contacts 13 or 38). Pet. 15–16, 23; Ex. 1004, Fig. 3. With respect to claim 5, Petitioner further argues that the microcontroller of Figure 3 interacts with the display means (LCD + touch screen display 30), emitter means (IR or RF option 39, or pin contacts 13 or 38), receiver means (IR or RF option 39, or pin contacts 13 or 38), and memory means (RAM, ROM or non-volatile RAM 34). Pet. 23; Ex. 1004, Fig. 3.

Patent Owner argues that claim 1 requires the control circuit of the claimed invention to cause credit card information to be stored in memory, and that Petitioner's arguments "overlook that [in Pitroda] the connection to 'non-volatile RAM 34' bypasses this 'micro controller.'" PO Resp. 11. In support, Patent Owner points to a portion of Pitroda that describes the UET card's "non-volatile RAM 34 and or touch memories with direct contact to connect to the CIU." *Id.* at 11–12 (quoting Ex. 1004, 11:20–25.) Thus, Patent Owner argues, "[in Pitroda] it is something *outside* the UET card (the CIU) that controls storage of account information." *Id.* at 12 (emphasis in original). Patent Owner posits that nothing in Pitroda suggests "the UET

14

IPR2014-00156
Patent 6,764,005 B2

[card] micro controller does any memory storage, much less the particular storage of account information required by the claims." *Id.*

At oral hearing, Patent Owner emphasized its position that, in Pitroda, "the CIU is the star of the show." Tr. 33:12. Patent Owner pointed out that Pitroda's Figure 7, which represents the software inside the CIU, includes "card information read" and "card information write." *Id.* at 35:9–25; PO Resp. 12. Thus, Patent Owner concluded that "there is utterly no question that the CIU plays the role of reading from memory and writing to memory." Tr. 35:25–36:2. Patent Owner also stated that "the parties agree that the only part of Pitroda that could possibly store the account information that we're all talking about is the NVM, the non-volatile memory [RAM 34 on the UET card]." *Id.* at 34:9–12.

With respect to claim 1, Petitioner argues that Patent Owner's contention overlooks "the many teachings in *Pitroda* showing the UET card performing the act of storing credit-card information." Pet. Reply 8. Petitioner cited a portion of Pitroda stating that "with respect to credit card transactions, the UET card of [Pitroda's] invention may be used to store in memory each credit card or bank transaction for which it is used" and concluded: "So that's the control circuit storing the transaction information in memory." Tr. 19:10–14 (quoting Ex. 1004, 7:33–35). Petitioner relies on the testimony of its expert that the memory management and database management functions performed by the microcontroller of the UET card manage the stored information, "including credit card information and transaction information for each card." Pet. Reply 9 (citing Ex. 2003, 145:4–152:7; Ex. 1004, 11:40–12:6). As summarized by Petitioner, "[c]onsidering that a microprocessor is a means for processing data, the

15

IPR2014-00156
Patent 6,764,005 B2

microprocessor executes the instructions associated with processing and storing the incoming account data." *Id.* at 10 (citing Ex. 1004, 18:18–20).

According to Petitioner's expert, Pitroda's account information can be stored in transaction memory area 410 of the UET card, either in non-volatile RAM 34 or in "volatile" RAM 33. Tr. 72:72–73:17; Ex. 2003, 147:23–148:8. Thus, Patent Owner's assertion that there is agreement between the parties that account information only can be stored in non-volatile RAM 34 is unsupported by the record.

Petitioner also relies on its expert's testimony to support the argument that the UET card, not the CIU, stores the information coming into the card. Tr. 73:18–74:8. Petitioner's expert pointed to Pitroda's disclosure of the UET card software, including its operating system, memory management, database management, and other utilities, and concluded that when Pitroda talks about performing database management and memory management, "I respectfully conclude that the UET card is performing those functions." Ex. 2003, 148:9–149:7; Ex. 1004, 12:7–12. More specifically, Petitioner argues that the microcontroller of the UET card runs the software. Pet. Reply 10 (citing Ex. 1004, 18:18–20); Tr. 74:22–25. Petitioner's expert, when asked for a disclosure of the microcontroller of Pitroda performing the memory storage for account information, cited to sections of Pitroda including column 12, starting at line 7, discussing the UET card software, column 2, lines 50 through 61, and column 3, lines 4 through 22. Ex. 2003, 148:9–149:7, 150:16–151:16.

Patent Owner's argument that only Pitroda's CIU directly contacts, reads from, and writes to the UET card's non-volatile RAM 34 disregards the disclosure of Pitroda as a whole. In the embodiment of Pitroda shown in

IPR2014-00156
Patent 6,764,005 B2

Pitroda's Figure 3, the microcontroller 33 is located centrally, connected by a line to non-volatile RAM 34 and by a different line to elements 35–39, including pin contacts 38 and IR/RF option 39.  Patent Owner was unable to explain the line connecting microcontroller 33 with non-volatile RAM 34 in Figure 3, other than to surmise that "it can only be a representation of co-occupying the same physical housing space."  Tr. 36:15–17.  Given the diagrammatic representation of the embodiment shown in Figure 3, in conjunction with the passages relied upon by Petitioner in Pitroda's specification, information entering the UET card via pin contacts 38 or IR/RF option 39 would be managed by microcontroller 33 to be stored in non-volatile RAM 34 or in RAM 33.  Patent Owner's argument that Pitroda's CIU must write directly to non-volatile RAM 34 is unpersuasive in view of Petitioner's showing that the UET card's microcontroller runs the software to write directly to transaction memory area 410.

Notwithstanding Patent Owner's argument and evidence to the contrary, with respect to claim 1, we are persuaded by Petitioner's argument and supporting evidence that Pitroda expressly discloses a control circuit, i.e. microcontroller 33, that would cause account data including account information received by the receiver from the host system to be stored in the memory.

With respect to claim 5, Petitioner argues that it requires only that the control circuit means is "electrically connected to" and "interact[s] with" the memory means, such that Patent Owner's argument regarding the interaction between the control circuit and the memory means is not applicable to claim 5.  Pet. Reply 8 (citing Ex. 1001, 11:11–18).  We agree that, with respect to the relationship between the control circuit means and the memory

17

means, claim 5 only requires that the control circuit means be connected electrically to and interact with the memory means. Thus, we are persuaded by Petitioner's argument on this point. Patent Owner has not rebutted the showing that Pitroda's microcontroller is connected electrically to and interacts with the memory means. *See* Ex. 1004, Figs. 3, 4.

   *2. Claims 2 and 5 – "operator interface" and "account location"*

   Claim 2 requires an "operator interface operable by a user to select an account location in said memory in which account data including account information received from the host system is to be stored." Claim 5 requires "operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and display of said selected account data including account information, to and from the host system, into and from said memory means and on said display means."

   As to claim 2, Petitioner argues that Pitroda discloses an operator interface affixed to the carrier and connected to the control circuit, namely, touch screen portion of LCD + touch screen display 30. Pet. 18; Ex. 1004, Fig. 3, element 30. Petitioner argues that the touch screen display allows the user to select an account location in the memory in which account data including account information received from the host system is to be stored and which account information is displayed on the display. Pet. 18; Ex. 1004, Figs. 13, 14. As to claim 5, Petitioner argues that Pitroda discloses an operator interface means, namely, the LCD display portion of LCD + touch screen display 30, affixed to said carrier or substrate, for accepting inputs from a user to select an account for the receipt, transmission, storage, and display of selected account data including account information. Pet. 22; Ex. 1004, Fig. 3, element 30.

IPR2014-00156
Patent 6,764,005 B2

Patent Owner argues that "Pitroda does not disclose user selection of an account location for storing account information." PO Resp. 14. Specifically, Patent Owner argues that Petitioner points to a different functionality within Pitroda, namely, picking an account for display, which is not the same thing as picking an account for storage. *Id*.

Referring *inter alia* to the touch screen display shown in Figures 13 and 14, Petitioner argues that Pitroda discloses that after a user has selected a credit card account for making a transaction, the UET card receives the incoming credit card transaction information for that selected credit card account. Pet. Reply 10–11. Specifically, Petitioner argues that in order to provide the cardholder with the selected card's information such as account summary and accounts payable, "the UET card has associated the credit card transaction information with the selected credit card." *Id*. at 11. Petitioner refers to the account-by-account example given in Pitroda (Ex. 1004, 6:16–43), which begins with the user selecting from a UET card a service institution account, and ends with "storing the transactional information for the credit transaction in the universal electronic transaction card *with respect to the service institution account*." Tr. 20:4–24; Ex. 1004, 6:41–43 (emphasis added). Petitioner argues that, given the complete disclosure of Pitroda and the supporting evidence provided by its expert, "[o]ne of ordinary skill in the art would understand that *Pitroda* discloses storing transaction information on an account-by-account basis." Pet. Reply 12.

Pitroda also allows a "user to review . . . a record of transactions with a service institution [i.e. including a credit card issuing entity]." Ex. 1004, 4:12–15, 3:6–11. Pitroda's example of user selection of a particular service institution credit card uses an American Express card as an example. *Id*.

IPR2014-00156
Patent 6,764,005 B2

at 16:21–49, Figs. 13, 14.  If the user were to choose the American Express card from the display shown in Figure 13, the display shown in Figure 14 would appear.  *Id.* at 16:21–24.  On the Figure 14 display, the user "can have access to the information related to account summary (AS), account payable (AP), weekly (W), monthly (M), yearly (Y) details.  *Id.* at 14:2–4.  The card holder can also ask for help (H), security (S), last use (LU) credit limit (CL), balance (BL), and load PC (LP)."  *Id.* at 14:4–6.

Finally, Pitroda states that "*corresponding to each card,* a transaction memory area 410 is provided to store all transaction receipts in electronic form to eliminate or reduce paper receipts."  *Id.* at 12:1–4 (emphasis added), Fig. 4.  The existence of a transaction memory area corresponding to each card supports the position that the user of Pitroda can, by selecting a particular card such as an American Express card, complete a transaction using that card.  Further, upon completion of the transaction, the account information would be stored in the transaction memory area corresponding to the American Express card.  The user also could review an account summary or other details particular to the American Express card via the Figure 14 display, which would require accessing information that is specific to the American Express card.  We are not persuaded by Patent Owner's argument that transaction memory area "corresponding to each card" means "corresponding to each UET card."  Tr. 60:14–23.  The paragraph in which transaction memory area 410 is described begins:  "*Corresponding to each card*, a data area 409 is provided for transient information related to the date of issue, date of expire, credit limit, etc." and continues:  "*Also corresponding to each card*, a transaction memory area 410 is provided . . . ."  Ex. 1004, 11:65–67, 12:1–4 (emphases added).  The totality

IPR2014-00156
Patent 6,764,005 B2

of the language supports a reading that Pitroda has a transaction memory area 410 corresponding to each of the credit cards 404, bank cards 405, ID cards 406, and health cards 407 on its UET card. *Id.* at 11:39–58; Fig. 4.

Although Patent Owner argues that Pitroda does not differentiate its incoming credit card transactions, such a conclusion is based on a hypothetical presented to Petitioner's expert, and presents a strained reading of Pitroda in view of its complete disclosure. The expert's testimony cited by Patent Owner states that Pitroda's UET card could store sales receipts in the American Express records within that card, or equivalently in a part of the UET card's memory that is "just a stack of sales receipts undifferentiated by account." Ex. 2003, 164:14–165:6. The argument is misplaced because it does not diminish Pitroda's express disclosure of the use of transaction memory area 410 in a manner that "corresponds" to each card, as we have already discussed. In other words, even if information also could be stored differently, i.e., without differentiation based on accounts, that does not negate or take away from the actual disclosure of storing information, separately, for different cards. Patent Owner does not explain why the existence of possible additional configurations defeats a finding of express anticipation based on an already disclosed embodiment.

With respect to claim 5, Petitioner argues that claim 5 does not recite an "account location" and, thus, Patent Owner's argument is not applicable to claim 5. Pet. Reply 10 (citing Ex. 1001, 11:3–10). Notwithstanding this argument, Petitioner's evidence as a whole supports its argument that Pitroda nevertheless discloses an operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and

IPR2014-00156
Patent 6,764,005 B2

display of said selected account data including account information, as discussed above.

### 3. Claim 6 – "account identifier means"

Claim 6 requires an account identifier means associated with each account stored in said memory means for allowing the user to direct the receipt, transmission, and display of account data including account information through said operator interface means by reference to said account identifier means. Petitioner argues that Pitroda discloses account identifier means allowing the user to direct account data through the operator interface by reference to the account identifier means as recited in claim 6, namely, the portion of the touch screen display for selecting each card in Figure 13. Pet. 24–25; Ex. 1004, Figs. 13, 14.

Patent Owner argues that Pitroda does not disclose referring to an account identifier through an operator interface to direct receipt and storage of account information, as required by claim 6. PO Resp. 16. Specifically, Patent Owner argues that "picking an account for display and for point of sale purchasing" is not the same thing as "picking an account identifier for receipt and storage." *Id.*

Petitioner argues that "the portion of the touch screen display area for selecting each credit card in Figure 13 would constitute the account identifier means." Pet. Reply 13. This account identifier means, according to Petitioner, would allow an individual credit card to be selected for a transaction, resulting in the receipt of transaction information that is associated with the selected credit card. *Id.*

Pitroda's display configurations, as depicted in Figures 13 and 14, function as account identifier means associated with each account. As

IPR2014-00156
Patent 6,764,005 B2

discussed above, Pitroda discloses a credit card transaction that begins with the user selecting from a UET card a service institution account, and ends with "storing the transactional information for the credit transaction in the universal electronic transaction card with respect to the service institution account." Ex. 1004, 6:41–43; Tr. 20:4–24. We are persuaded by Petitioner's reasoning that Pitroda discloses the account identifier means of claim 6.

 *4. Remaining Claim Elements; Dependent Claims 3 and 4*

As discussed, we find that Petitioner has established, by a preponderance of the evidence, that Pitroda anticipates claims 1, 2, 5, and 6 as to the claim elements discussed with particularity above. We have reviewed the arguments presented in the Petition and the supporting evidence regarding the anticipation of the remaining elements of claims 1, 2, 5, and 6, which were not disputed by Patent Owner in its Response. Pet. 11– 25. Petitioner further contends Pitroda discloses the subject matter recited in claims 3 and 4, each of which depends indirectly from claim 1. *Id.* at 19–20. We also have reviewed the Petition and supporting evidence presenting arguments that the additional subject matter of claims 3 and 4 is disclosed in Pitroda. *Id.* Patent Owner, in its Response, relies solely on its arguments and evidence concerning the disputed terms in claims 1, 2, 5, and 6. *See generally* PO Resp. In the Scheduling Order, we cautioned Patent Owner that any arguments for patentability not raised in the Response would be deemed waived. Paper 10, 3. After reviewing of the arguments and evidence presented concerning the remaining claim elements of claims 1, 2, 5, and 6, and dependent claims 3 and 4, we find a preponderance of the evidence establishes that Pitroda expressly discloses the remaining elements

IPR2014-00156
Patent 6,764,005 B2

of claims 1, 2, 5, and 6, and each and every limitation of dependent claims 3 and 4. We conclude that claims 1–6 are unpatentable as anticipated by Pitroda.

### C. Patent Owner's Motion to Exclude

Patent Owner filed a Motion to Exclude (Paper 23, "Mot. to Excl."), to which Petitioner responded (Paper 27, "Resp. to Mot. to Excl.") and on which Patent Owner filed a Reply (Paper 28, "Reply on Mot. to Excl."). Patent Owner's motion seeks to exclude Exhibit 1013 as not properly authenticated, as hearsay, and as irrelevant, Exhibit 1014 as irrelevant, and Exhibit 1015 as not properly authenticated and as hearsay.[3] Mot. to Excl. 1–3. The moving party has the burden of proof to establish that it is entitled to the requested relief. 37 C.F.R. § 42.20(c).

Petitioner alleges that Exhibit 1013 was not objected to prior to filing the Motion to Exclude. Resp. to Mot. to Excl. 3. Patent Owner "concedes that the basis on which it believed itself excused from the objection requirement was not sound." Reply on Mot. to Excl. 1. Patent Owner must object timely to the evidence it seeks to exclude. 37 C.F.R. § 42.64(b)(1). Once an objection is filed, a motion to exclude "must be filed to preserve any objection." *Id.* § 42.64(c). The motion to exclude must identify the prior objection. *Id.* There is no record that Patent Owner objected to Exhibit 1013 prior to filing the Motion to Exclude, as required by Rule 42.64.

---

[3] The Motion to Exclude also seeks to exclude Ex. 1016 in the IPR2014-00158 proceeding. As that document is not part of this proceeding, however, it is unsuitable for consideration here.

IPR2014-00156
Patent 6,764,005 B2

We do not rely upon Exhibits 1014 and 1015 in our present determination.  The Motion to Exclude therefore need not be decided as to these Exhibits.  Accordingly, the Motion to Exclude is *dismissed* as to Exhibits 1014 and 1015 and *denied* as to Exhibit 1013.

III.    SUMMARY

Petitioner has demonstrated, by a preponderance of the evidence, that claims 1–6 of the '005 patent are unpatentable as anticipated by Pitroda. This is a Final Written Decision of the Board under 35 U.S.C. § 318(a).

IV.    ORDER

For the reasons given, it is

ORDERED that Patent Owner's Motion to Exclude is *dismissed* as to Exhibits 1014 and 1015 and *denied* as to Exhibit 1013;

FURTHER ORDERED that claims 1–6 of the '005 patent are *unpatentable*; and

FURTHER ORDERED that parties to the proceeding seeking judicial review of this final written decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2014-00156
Patent 6,764,005 B2

FOR PETITIONER:
Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com

FOR PATENT OWNER:
Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**J. CARL COOPER,**
**Owner/Appellant**

**v.**

**SQUARE, INC.,**
**Petitioner/Appellee**

**Proceeding No: IPR2014-00156**

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit was timely filed on July 13, 2015, in the United States Patent and Trademark Office in connection with the above identified *Inter Partes Review* proceeding. Pursuant to 35 U.S.C. § 143, a Certified List is this day being forwarded to the Federal Circuit.

Respectfully submitted,

By: _Macia L. Fletcher_____
Macia L. Fletcher
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

Date: August 24, 2015

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the

foregoing has been served on Appellant and Appellee this 24th day of August,

2015, as follows:


FOR PETITIONER:
Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com



FOR PATENT OWNER:
Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com

By: _Macia L. Fletcher_____
Macia L. Fletcher
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

**U.S. DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

**August 24, 2015**

<span>(Date)</span>

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Inter Partes Review* proceeding identified below.

**SQUARE, INC.,**
**Petitioner,**
**v.**

**J. CARL COOPER,**
**Patent Owner.**

**Case:  IPR2014-00156**
**Patent No. 6,764,005 B2**

By authority of the

**DIRECTOR OF THE UNITED STATES**
**PATENT AND TRADEMARK OFFICE**

*Macia L. Fletcher*

*Certifying Officer*



**Prosecution History IPR2014-00156**

| Date | Document |
|------|----------|
| 11/18/2013 | Petition for Inter Partes Review |
| 11/18/2013 | Petitioner's Power of Attorney |
| 12/9/2013 | Notice of Filing Date Accorded to Petition |
| 12/9/2013 | Patent Owner's Power of Attorney |
| 12/9/2013 | Patent Owner's Mandatory Notices |
| 2/4/2014 | Order - Conduct of the Proceeding |
| 2/25/2014 | Patent Owner's Preliminary Response |
| 5/15/2014 | Decision  - Institution of Inter Partes Review |
| 5/15/2014 | Scheduling Order |
| 5/29/2014 | Petitioner's Request for Rehearing |
| 5/30/2014 | Petitioner's Notice Regarding Proposed Motions |
| 6/4/2014 | Order - Conduct of the Proceedings |
| 6/5/2014 | Decision - Order Denying Request for Rehearing |
| 6/13/2014 | Petitioner's Updated Exhibit List |
| 6/13/2014 | Joint Stipulation Regarding Conduct of Proceedings |
| 6/18/2014 | Notice of Deposition - Dreifus |
| 6/23/2014 | Order - Conduct of the Proceeding |
| 7/16/2014 | Patent Owner's Response Opposing Petition for Inter Partes Review |
| 8/12/2014 | Notice of Deposition - Cooper |
| 9/16/2014 | Petitioner's Reply to Patent Owner's Response |
| 9/16/2014 | Petitioner's Updated Exhibit List |
| 11/6/2014 | Patent Owner's Motion to Exclude |
| 11/6/2014 | Patent Owner's Request for Oral Argument |
| 11/6/2014 | Petitioner's Request for Oral Hearing |
| 11/14/2014 | Order - Trial Hearing |
| 11/20/2014 | Petitioner's Response to Motion to Exclude |
| 12/1/2014 | Patent Owner's Reply to Response to Motion to Exclude |
| 12/2/2014 | Patent Owner's Corrected Reply to Response to Motion to Exclude |
| 12/11/2014 | Joint Stipulation to Expunge Papers from Record |
| 12/16/2014 | Order - Decision on Motion to Expunge |
| 1/5/2015 | Order - Conduct of Proceeding |
| 1/6/2015 | Petitioner's Updated Exhibit List |
| 2/20/2015 | Oral Hearing Transcript |
| 5/14/2015 | Final Written Decision |

Paper No. 39
Filed July 13, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————————

BEFORE THE PATENT TRIAL AND APPEAL
BOARD

————————————————

SQUARE, INC.
Petitioner
v.

J. CARL COOPER
Patent Owner

————————————————

Case IPR2014-00156
Patent No. 6,764,005

————————————————

**NOTICE OF APPEAL TO THE FEDERAL CIRCUIT (35 U.S.C. § 141(c))**

To: Office of the General Counsel
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Patent Owner hereby provides notice of appeal to the US Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141 and 142 from the final written decision of the Patent Trial and Appeal Board dated May 14, 2015.

Pursuant to 37 C.F.R. § 90.2(a)(3)(ii) the expected issues on appeal will include

1.   Whether *Inter Partes* Review proceedings (namely IPR2014-00156) violate the United States Constitution, Article III, based on the Separation of Powers doctrine, as well as Patent Owner's Seventh Amendment right to a jury trial on adjudications of patent validity.

2.   Whether Petitioner has shown by a preponderance of the evidence that claims 1-6 of U.S. Patent No. 6,764,005 are unpatentable.

Patent Owner has electronically filed this notice with the Patent Trial and Appeal Board, pursuant to 37 C.F.R. § 90.2(a)(1), 37 C.F.R. § 42.6(b)(1) and Federal Circuit Rule 15(a)(1).

Simultaneously herewith, patent owner is providing the Federal Circuit an electronic copy of the present Notice of Appeal (pursuant to 37 C.F.R. § 90.2(a)(2)(i) and 15(a)(1)) together with a $500 fee (pursuant to 37 C.F.R. § 90.2(a)(2)(ii) and Federal Circuit Rule 52(a)(3)(A)).

All copies include a copy of the final written decision.

Date: July 13, 2015                          Respectfully submitted,

   _/Robert P. Greenspoon/_
Robert P. Greenspoon
Reg. No. 40,004
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., Suite 2700
Chicago, IL 60601
Phone:  312-551-9500
Fax:  312-551-9501
Email:  rpg@fg-law.com

**Counsel Patent Owner J. Carl Cooper
and Exclusive Licensee eCharge Licensing
LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing NOTICE OF APPEAL TO THE FEDERAL CIRCUIT (35 U.S.C. § 141(c)) was filed on July 13, 2015 with the United States Patent & Trademark Office, and served electronically on July 13, 2015 on the following counsel of record for Petitioner at the below-listed email address:

> Erika Arner
> Aaron Capron
> Finnegan, Henderson, Farabow,
>  Garrett & Dunner, LLP
> email: Square_v_eCharge_IPR@finnegan.com

Date:  July 13, 2015                   By:    */Robert P. Greenspoon/*
                                       Robert Greenspoon
                                       Reg. No. 40,004

                                       **Flachsbart & Greenspoon, LLC**

Trials@uspto.gov                              Paper 38
Tel: 571-272-7822                    Entered: May 14, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

SQUARE, INC.,
Petitioner

v.

J. CARL COOPER,
Patent Owner.

_____

Case IPR2014-00156
Patent 6,764,005 B2

_____

Before JAMESON LEE, GEORGE R. HOSKINS, and
KRISTINA M. KALAN, *Administrative Patent Judges.*

KALAN*, Administrative Patent Judge.*

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2014-00156
Patent 6,764,005 B2

## I. INTRODUCTION

### A. Background

Square, Inc. ("Petitioner") filed a Petition to institute an *inter partes* review of claims 1–6 of U.S. Patent No. 6,764,005 B2 (Ex. 1001, "the '005 patent"). Paper 1 ("Pet."). J. Carl Cooper ("Patent Owner") filed a Preliminary Response. Paper 8 ("Prelim. Resp."). We instituted trial on Petitioner's asserted ground that claims 1–6 are unpatentable as anticipated by Pitroda.[1] Paper 9 ("Dec.").

During trial, Patent Owner filed a Patent Owner Response (Paper 19, "PO Resp."), which was accompanied by a Declaration from J. Carl Cooper (Ex. 2004). Petitioner filed a Reply to the Patent Owner Response. Paper 21 ("Pet. Reply"). A consolidated oral hearing for IPR2014-00156 and IPR2014-00157, each involving the same Petitioner and Patent Owner, was held on January 9, 2015. A transcript of the consolidated hearing has been entered into the record. Paper 37 ("Tr.").

We have jurisdiction under 35 U.S.C. § 6. This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. We determine that Petitioner has shown by a preponderance of the evidence that claims 1–6 of the '005 patent are unpatentable. Patent Owner's Motion to Exclude (Paper 23) is dismissed-in-part and denied-in-part.

### B. Related Proceedings

Petitioner represents that the '005 patent is the subject of pending lawsuits (1) in the Northern District of Illinois (filed by eCharge Licensing LLC against Petitioner, No. 1:13-cv-06445), Ex. 1003; and (2) in the District

---

[1] U.S. Patent No. 5,590,038, issued Dec. 31, 1996 (Ex. 1004).

IPR2014-00156
Patent 6,764,005 B2

of Massachusetts (filed by SCVNGR, Inc. against eCharge Licensing LLC, No. 1:13-cv-12418).  Pet. 5–6.

### C. The '005 Patent

The '005 patent "relates to the use of devices having information or patterns carried in or on some storage media, examples of which include photographic patterns, keys or the magnetic strip on credit cards."  Ex. 1001, 1:15–18.  Figure 2 of the '005 patent is reproduced below:



Figure 2 is a diagram of the preferred embodiment of the '005 patent's invention, dubbed a multi-card by the inventor, having plastic substrate 3, on which programmable magnetic strip 4, LCD display 5, solar cell power source 6, infrared emitter 7, infrared sensor 8, and key pad 9 are mounted suitably.  *Id.* at 2:51–57.

IPR2014-00156
Patent 6,764,005 B2

Figure 3 of the '005 patent is reproduced below:



Figure 3 is a drawing explaining the operation of the preferred embodiment. *Id.* at 2:29–30. Figure 3 "includes a console comprised of programming circuitry 16 and card reader 17." *Id.* at 5:51–52. According to the Specification: "Control circuit [11] operates interactively with the input/output interface 14, examples including those associated with 7 and 8 of FIG. 2, to communicate with the console." *Id.* at 5:38–40.

### D. Illustrative Claims

Of the challenged claims, claims 1 and 5 are independent. As to the remaining challenged claims, claims 2–4, directly or indirectly, depend from claim 1, and claim 6 depends from claim 5. Claims 1 and 5 are reproduced below:

> 1. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:
> a carrier having a planar surface;
> a memory affixed to said carrier, for storing account data including account information for at least one account;

4

IPR2014-00156
Patent 6,764,005 B2

an emitter affixed to said carrier and programmed with account identifier information for transmitting account identifying information to said host system;

a receiver affixed to said carrier for receiving account data including account information from said host system;

a display affixed to said carrier for selectively displaying account information;

a control circuit affixed to said carrier and coupled to each of said memory, said display and said receiver, said control circuit causing account data including account information received by said receiver from the host system to be stored in said memory and causing said account information stored in said memory to appear on said display; and

a power source affixed to said carrier and coupled to at least one of said memory, said receiver, said emitter, said display and said control circuit;

whereby, the use of the credit card on the host system allows the emitter to identify an account to the host system, the receiver to receive the particular account data including account information from the host system, the control circuit to cause the particular account data including account information to be stored in the memory and to cause said account information, consisting of all or a portion of said account data, to appear on the display.

Ex. 1001, 9:62–10:27.

5. A credit card for providing and receiving account data including account information from a host system, said credit card comprising:

substrate means to provide support for components of said apparatus;

display means for presentation of said information, affixed to said substrate means;

emitter means for transmission of said account data including account information to the host system, affixed to said substrate means;

IPR2014-00156
Patent 6,764,005 B2

receiver means for receipt of said account data including account information from the host system, affixed to said substrate means;

memory means for storing at least one said account data including account information and upon activation recalling for display or transmission said account data including account information;

operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and display of said selected account data including account information, to and from the host system, into and from said memory means and on said display means, said operator interface means being affixed to said substrate means;

control circuit means for responding to said operator interface means by activating and driving the display means, interacting with the emitter means, interacting with the receiver means, and interacting with the memory means, said control circuit means being affixed to said substrate means and electrically connected to said memory means, said display means, said emitter means, said receiver means and said operator interface means;

power source means for providing electrical power said power source means being affixed to said substrate means and electrically connected to at least one of said control circuit means, said operator interface means, said emitter means, said receiver means, said memory means and said display means;

whereby, when the credit card is coupled to a host account system, selected account data including account information stored in memory on the card can be transmitted to the host account system, selected account data including account information on the host account system can be transmitted to and received by the card and stored in memory and selected account information received from the host system or stored on the card memory can be selectively displayed for the user of the card.

Ex. 1001, 10:52–12:14.

IPR2014-00156
Patent 6,764,005 B2

II.    ANALYSIS

For the challenged claims, Petitioner must prove unpatentability by a preponderance of the evidence. 35 U.S.C. § 316(e). We begin with a claim construction analysis, and then follow with specific analysis of the prior art.

A.  *Claim Construction*

The parties agree that '005 patent expired on November 4, 2014, subsequent to the institution of trial in this proceeding. *See* Paper 16, 1. We construe expired patent claims according to the standard applied by the district courts. *See In re Rambus, Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012). Specifically, we apply the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17). Only those terms which are in controversy need to be construed, and only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In the Decision to Institute, we interpreted the term "emitter" as a device that transmits a signal conveying information to another device, and that is recognizable to one of ordinary skill in the art as an emitter. Dec. 10–11. We confirmed that applying the *Phillips* standard did not change this construction, in our Order dated June 23, 2014. Paper 18, 2–3. Patent Owner provides additional discussion in its Response to support its contention that the claim term "emitter" connotes a wireless transmission, arguing that the claimed emitter "is always 'transmitting' (claim 1) or for

7

IPR2014-00156
Patent 6,764,005 B2

'transmissions' (claim 5)." PO Resp. 5. Patent Owner argues that the
definition of "emit" as would be understood by one of ordinary skill in the
art at the time of the invention is "to send something out into the air,
especially gas, light or heat." *Id.* at 5–6 (citing
http://www.macmillandictionary.com/dictionary/american/emit). Patent
Owner concludes that this "locks down the specific sense intended by [the
inventor] Mr. Cooper: something that sends out over the air," and thus, "Mr.
Cooper chose a wireless sense of emitter for his claims." *Id.* (citing Ex.
2004 ¶¶ 50–56, 80–86). Petitioner challenges Patent Owner's definition of
the term "emit," given that the term at issue is "emitter," and states that the
overwhelming evidence supports the Board's construction of "emitter." Pet.
Reply 2–5.

The language of claim 1 provides for "an emitter . . . for transmitting,"
and Patent Owner has not supplied a basis for its assertion that the emitter of
claim 1 is "always transmitting." Claim 5 provides for "emitter means for
transmission." The Specification provides that "[e]mitter 7 may be the
preferred infrared LED, antenna, coil, transducer, or *any other device*
capable of conveying information or patterns from the invention or outside
devices." Ex. 1001, 5:11–14 (emphasis added). Given the foregoing, we are
unpersuaded by Patent Owner's argument that an emitter connotes a wireless
transmission. We see no reason based on the complete record now before us
to alter the construction from the Decision to Institute, and maintain the
construction for this Final Written Decision.

In the Decision to Institute, we also construed the term "host system"
as "a system that receives account data from, and provides account data to, a
credit card" as well as various terms reciting "means." Dec. 8–10. Neither

IPR2014-00156
Patent 6,764,005 B2

party now proposes a different construction of these terms.  Regarding the "means" terms, Petitioner in its Petition proposed that the several terms containing "means" in claims 5 and 6 do not qualify as terms under 36 U.S.C. § 112, sixth paragraph.[2]  Pet. 8–10.  We determined that the various "means" terms of claim 5 and 6 were not means-plus-function elements under § 112, ¶ 6, but were elements defined by the structure of the various words preceding each such means.  Dec. 9–10.  We maintain this construction for the purposes of the Final Written Decision and particularly for our discussion of the "emitter means," "control circuit means," and "operator interface means" of claim 5 and the "account identifier means" of claim 6, *infra*.

Based on the complete record now before us, we see no reason to alter our earlier constructions, and maintain the constructions for this Final Written Decision.

### B. Anticipation by Pitroda

We have reviewed the Petition, the Patent Owner Response, and Petitioner's Reply, as well as the relevant evidence discussed in those papers.  The parties focus their arguments on several terms present in certain claims of the '005 patent, namely, (1) in claims 1 and 5, the terms (a) "emitter" and (b) "control circuit;" (2) in claims 2 and 5, the terms "operator interface" and "account location"; and (3) in claim 6, the term "account identifier means."  We address these arguments in turn.

---

[2] Section 4(c) of the Leahy-Smith America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 (2011) ("AIA") re-designated 35 U.S.C. § 112, ¶ 6, as 35 U.S.C. § 112(f).  Because the '005 patent has a filing date prior to September 16, 2012, the effective date of § 4(c) of the AIA, we refer to the pre-AIA version of 35 U.S.C. § 112.

With respect to the independent claims, Pitroda teaches a universal electronic transaction card ("UET card" or "UETC"). Ex. 1004, Abst. Figure 3 of Pitroda is reproduced below:



**FIG. 3**

Figure 3 shows a block diagram of one embodiment of the UET card. *Id.* at 8:28–29. The UET card has "a micro controller with associated RAM/ROM and Input/Output port management 33," as well as non-volatile RAM 34. *Id.* at 11:20–21. The UET card further includes LCD and touch screen display 30, wherein the touch screen portion of display 30 is large enough to enable a user to operate touch controls. *Id.* at 11:14–19.

> 1. *Claims 1 and 5*

>> a. *Emitter*

Claim 1 requires "an emitter affixed to said carrier and programmed with account identifier information for transmitting account identifying information to said host system." Claim 5 requires "emitter means for

IPR2014-00156
Patent 6,764,005 B2

transmission of said account data including account information to the host system, affixed to said substrate means." As is relevant here, Petitioner argues that Pitroda discloses an emitter, namely, pin contacts 13 or 38, or infrared (IR) or radio frequency (RF) option 39. Pet. 14; Ex. 1004, Fig. 3, element 38 (pins contact), element 39 (IR or RF option).

Patent Owner argues that the "emitter" limitation in claims 1 and 5 is not met by Pitroda. PO Resp. 6–10. As discussed in Section II.A, *supra,* Patent Owner argues that the claimed emitter "is always 'transmitting' (claim 1) or for 'transmissions' (claim 5)." *Id.* at 5. Relying on the definition of "emit" as "to send something out into the air, especially gas, light or heat" (citing http://www.macmillandictionary.com/dictionary/ american/emit), Patent Owner concludes that this "locks down the specific sense intended by [the inventor] Mr. Cooper: something that sends out over the air," and thus "Mr. Cooper chose a wireless sense of emitter for his claims." *Id*. at 5–6 (citing Ex. 2004 ¶¶ 50–56, 80–86). Patent Owner, thus, concludes that metal contacts 38 of Pitroda are "not a permissible 'emitter' under the proper construction of claims 1 and 5." *Id*. at 9.

Having argued that the inventor intended the emitter limitation to be wireless, Patent Owner further argues that, because Pitroda does not disclose what structure the IR/RF communication would use or what information it communicates, Pitroda does not disclose explicitly wireless transmission to or from the UET card of account data or account identifying information. *Id.* at 6–9. Patent Owner also states that nothing in Pitroda inherently discloses wireless transmission to or from the UET card of account data or account identifying information. *Id.* at 9. In sum, Patent Owner argues that "pin contacts 13 or 38 cannot qualify [as the emitter] because they are not

IPR2014-00156
Patent 6,764,005 B2

wireless. And, the IR/RF option cannot qualify because Pitroda does not specify what data might travel that way." *Id.* at 10 n.3.

Petitioner counters that the Specification describes an emitter broadly enough to encompass both wired and wireless communication means. Pet. Reply 3 (citing Ex. 1001, 5:11–14) ("Emitter 7 may be the preferred infrared LED, antenna, coil, transducer, or any other device capable of conveying information or patterns from the invention or outside devices"). Petitioner further argues that during Mr. Cooper's deposition, in response to the question of whether, in general, "transmission of information, does that include wired and wireless communication?", Mr. Cooper responded, "Yeah, information can be transmitted by wires or wirelessly." *Id.* (citing Ex. 1011, 212:16–22). Petitioner points out that the claim language does not limit emitters to wireless emitters only. *Id.* at 3–4.

With respect to Pitroda's disclosure of an emitter, Petitioner argues that Pitroda's metal contacts embodiment satisfies the claimed emitter limitation, and that Pitroda's IR/RF option embodiment also satisfies the claimed emitter limitation. *Id.* at 6–8. To support the former contention, Petitioner points to Patent Owner's concession that Pitroda's metal contacts transmit credit card information to outside devices like the communication interface unit ("CIU"). *Id.* at 6 (citing PO Resp. 9). To support the latter contention, Petitioner relies on its expert's testimony that Pitroda's IR/RF option can be used to transmit account data to the CIU and is programmed with account data. *Id.* at 7–8 (citing Ex. 1008 §§ VII.A.1, VII.A.5).

We are persuaded that the Specification, including the claim language, supports the use of metal contacts as emitters. As provided in the Specification, the emitter may be "any other device capable of conveying

12

IPR2014-00156
Patent 6,764,005 B2

information or patterns from the invention to outside devices." Ex. 1001, 5:12–14. The metal contacts of Pitroda transmit credit card information outside of the UET card. Ex. 1004, 16:35–41; PO Resp. 9 ("the only complete disclosure of any credit card information being transmitted outside the unit exists at Ex. 1004, 16:35–41").

We also are persuaded that the IR/RF option of Pitroda is an emitter. Patent Owner acknowledges that Pitroda discloses that its UET card transmits information. PO Resp. 9. Pitroda's IR/RF option is provided as an alternative means of communication of the information required to be communicated by the UET card to the CIU. *See* Ex. 1004, 9:55–59 (the CIU "interfaces with the UET card either through physical metallic contact—preferred for the touch memory devices—or infra red or radio frequency [IR/RF] based wireless transmit and receive units"); 9:59–63 ("The CIU includes means for receiving data from the UET card, such as metal contacts to connect to the metal contacts 13 of the UET card, or infrared or radio frequency [IR/RF] based wireless systems, depending on the system used by the UET card."). The use of either metal contacts option or IR/RF option as an emitter is disclosed explicitly in Pitroda, and not merely a possibility or probability.

### b. Control Circuit

Claim 1 requires "a control circuit affixed to said carrier and coupled to each of said memory, said display and said receiver, said control circuit causing account data including account information received by said receiver from the host system to be stored in said memory and causing said account information stored in said memory to appear on said display." Claim 5 requires "control circuit means for responding to said operator

IPR2014-00156
Patent 6,764,005 B2

interface means by activating and driving the display means, interacting with the emitter means, interacting with the receiver means, and interacting with the memory means, said control circuit means being affixed to said substrate means and electrically connected to said memory means, said display means, said emitter means, said receiver means and said operator interface means."

Petitioner contends that the claimed control circuit reads on Pitroda's microcontroller on the UET card, as shown in Figure 3, which microcontroller is coupled to the memory (RAM, ROM or non-volatile RAM 34), the display (LCD display portion of LCD and touch screen display 30), and the receiver (IR or RF option 39, or pin contacts 13 or 38). Pet. 15–16, 23; Ex. 1004, Fig. 3. With respect to claim 5, Petitioner further argues that the microcontroller of Figure 3 interacts with the display means (LCD + touch screen display 30), emitter means (IR or RF option 39, or pin contacts 13 or 38), receiver means (IR or RF option 39, or pin contacts 13 or 38), and memory means (RAM, ROM or non-volatile RAM 34). Pet. 23; Ex. 1004, Fig. 3.

Patent Owner argues that claim 1 requires the control circuit of the claimed invention to cause credit card information to be stored in memory, and that Petitioner's arguments "overlook that [in Pitroda] the connection to 'non-volatile RAM 34' bypasses this 'micro controller.'" PO Resp. 11. In support, Patent Owner points to a portion of Pitroda that describes the UET card's "non-volatile RAM 34 and or touch memories with direct contact to connect to the CIU." *Id.* at 11–12 (quoting Ex. 1004, 11:20–25.) Thus, Patent Owner argues, "[in Pitroda] it is something *outside* the UET card (the CIU) that controls storage of account information." *Id.* at 12 (emphasis in original). Patent Owner posits that nothing in Pitroda suggests "the UET

14

IPR2014-00156
Patent 6,764,005 B2

[card] micro controller does any memory storage, much less the particular storage of account information required by the claims." *Id.*

At oral hearing, Patent Owner emphasized its position that, in Pitroda, "the CIU is the star of the show." Tr. 33:12. Patent Owner pointed out that Pitroda's Figure 7, which represents the software inside the CIU, includes "card information read" and "card information write." *Id.* at 35:9–25; PO Resp. 12. Thus, Patent Owner concluded that "there is utterly no question that the CIU plays the role of reading from memory and writing to memory." Tr. 35:25–36:2. Patent Owner also stated that "the parties agree that the only part of Pitroda that could possibly store the account information that we're all talking about is the NVM, the non-volatile memory [RAM 34 on the UET card]." *Id.* at 34:9–12.

With respect to claim 1, Petitioner argues that Patent Owner's contention overlooks "the many teachings in *Pitroda* showing the UET card performing the act of storing credit-card information." Pet. Reply 8. Petitioner cited a portion of Pitroda stating that "with respect to credit card transactions, the UET card of [Pitroda's] invention may be used to store in memory each credit card or bank transaction for which it is used" and concluded: "So that's the control circuit storing the transaction information in memory." Tr. 19:10–14 (quoting Ex. 1004, 7:33–35). Petitioner relies on the testimony of its expert that the memory management and database management functions performed by the microcontroller of the UET card manage the stored information, "including credit card information and transaction information for each card." Pet. Reply 9 (citing Ex. 2003, 145:4–152:7; Ex. 1004, 11:40–12:6). As summarized by Petitioner, "[c]onsidering that a microprocessor is a means for processing data, the

microprocessor executes the instructions associated with processing and storing the incoming account data." *Id.* at 10 (citing Ex. 1004, 18:18–20).

According to Petitioner's expert, Pitroda's account information can be stored in transaction memory area 410 of the UET card, either in non-volatile RAM 34 or in "volatile" RAM 33. Tr. 72:72–73:17; Ex. 2003, 147:23–148:8. Thus, Patent Owner's assertion that there is agreement between the parties that account information only can be stored in non-volatile RAM 34 is unsupported by the record.

Petitioner also relies on its expert's testimony to support the argument that the UET card, not the CIU, stores the information coming into the card. Tr. 73:18–74:8. Petitioner's expert pointed to Pitroda's disclosure of the UET card software, including its operating system, memory management, database management, and other utilities, and concluded that when Pitroda talks about performing database management and memory management, "I respectfully conclude that the UET card is performing those functions." Ex. 2003, 148:9–149:7; Ex. 1004, 12:7–12. More specifically, Petitioner argues that the microcontroller of the UET card runs the software. Pet. Reply 10 (citing Ex. 1004, 18:18–20); Tr. 74:22–25. Petitioner's expert, when asked for a disclosure of the microcontroller of Pitroda performing the memory storage for account information, cited to sections of Pitroda including column 12, starting at line 7, discussing the UET card software, column 2, lines 50 through 61, and column 3, lines 4 through 22. Ex. 2003, 148:9–149:7, 150:16–151:16.

Patent Owner's argument that only Pitroda's CIU directly contacts, reads from, and writes to the UET card's non-volatile RAM 34 disregards the disclosure of Pitroda as a whole. In the embodiment of Pitroda shown in

Pitroda's Figure 3, the microcontroller 33 is located centrally, connected by a line to non-volatile RAM 34 and by a different line to elements 35–39, including pin contacts 38 and IR/RF option 39.  Patent Owner was unable to explain the line connecting microcontroller 33 with non-volatile RAM 34 in Figure 3, other than to surmise that "it can only be a representation of co-occupying the same physical housing space."  Tr. 36:15–17.  Given the diagrammatic representation of the embodiment shown in Figure 3, in conjunction with the passages relied upon by Petitioner in Pitroda's specification, information entering the UET card via pin contacts 38 or IR/RF option 39 would be managed by microcontroller 33 to be stored in non-volatile RAM 34 or in RAM 33.  Patent Owner's argument that Pitroda's CIU must write directly to non-volatile RAM 34 is unpersuasive in view of Petitioner's showing that the UET card's microcontroller runs the software to write directly to transaction memory area 410.

Notwithstanding Patent Owner's argument and evidence to the contrary, with respect to claim 1, we are persuaded by Petitioner's argument and supporting evidence that Pitroda expressly discloses a control circuit, i.e. microcontroller 33, that would cause account data including account information received by the receiver from the host system to be stored in the memory.

With respect to claim 5, Petitioner argues that it requires only that the control circuit means is "electrically connected to" and "interact[s] with" the memory means, such that Patent Owner's argument regarding the interaction between the control circuit and the memory means is not applicable to claim 5.  Pet. Reply 8 (citing Ex. 1001, 11:11–18).  We agree that, with respect to the relationship between the control circuit means and the memory

means, claim 5 only requires that the control circuit means be connected electrically to and interact with the memory means. Thus, we are persuaded by Petitioner's argument on this point. Patent Owner has not rebutted the showing that Pitroda's microcontroller is connected electrically to and interacts with the memory means. *See* Ex. 1004, Figs. 3, 4.

    *2. Claims 2 and 5 – "operator interface" and "account location"*

    Claim 2 requires an "operator interface operable by a user to select an account location in said memory in which account data including account information received from the host system is to be stored." Claim 5 requires "operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and display of said selected account data including account information, to and from the host system, into and from said memory means and on said display means."

    As to claim 2, Petitioner argues that Pitroda discloses an operator interface affixed to the carrier and connected to the control circuit, namely, touch screen portion of LCD + touch screen display 30. Pet. 18; Ex. 1004, Fig. 3, element 30. Petitioner argues that the touch screen display allows the user to select an account location in the memory in which account data including account information received from the host system is to be stored and which account information is displayed on the display. Pet. 18; Ex. 1004, Figs. 13, 14. As to claim 5, Petitioner argues that Pitroda discloses an operator interface means, namely, the LCD display portion of LCD + touch screen display 30, affixed to said carrier or substrate, for accepting inputs from a user to select an account for the receipt, transmission, storage, and display of selected account data including account information. Pet. 22; Ex. 1004, Fig. 3, element 30.

IPR2014-00156
Patent 6,764,005 B2

Patent Owner argues that "Pitroda does not disclose user selection of an account location for storing account information." PO Resp. 14. Specifically, Patent Owner argues that Petitioner points to a different functionality within Pitroda, namely, picking an account for display, which is not the same thing as picking an account for storage. *Id.*

Referring *inter alia* to the touch screen display shown in Figures 13 and 14, Petitioner argues that Pitroda discloses that after a user has selected a credit card account for making a transaction, the UET card receives the incoming credit card transaction information for that selected credit card account. Pet. Reply 10–11. Specifically, Petitioner argues that in order to provide the cardholder with the selected card's information such as account summary and accounts payable, "the UET card has associated the credit card transaction information with the selected credit card." *Id.* at 11. Petitioner refers to the account-by-account example given in Pitroda (Ex. 1004, 6:16–43), which begins with the user selecting from a UET card a service institution account, and ends with "storing the transactional information for the credit transaction in the universal electronic transaction card *with respect to the service institution account*." Tr. 20:4–24; Ex. 1004, 6:41–43 (emphasis added). Petitioner argues that, given the complete disclosure of Pitroda and the supporting evidence provided by its expert, "[o]ne of ordinary skill in the art would understand that *Pitroda* discloses storing transaction information on an account-by-account basis." Pet. Reply 12.

Pitroda also allows a "user to review . . . a record of transactions with a service institution [i.e. including a credit card issuing entity]." Ex. 1004, 4:12–15, 3:6–11. Pitroda's example of user selection of a particular service institution credit card uses an American Express card as an example. *Id.*

IPR2014-00156
Patent 6,764,005 B2

at 16:21–49, Figs. 13, 14.  If the user were to choose the American Express card from the display shown in Figure 13, the display shown in Figure 14 would appear.  *Id.* at 16:21–24.  On the Figure 14 display, the user "can have access to the information related to account summary (AS), account payable (AP), weekly (W), monthly (M), yearly (Y) details.  *Id.* at 14:2–4.  The card holder can also ask for help (H), security (S), last use (LU) credit limit (CL), balance (BL), and load PC (LP)."  *Id.* at 14:4–6.

Finally, Pitroda states that "*corresponding to each card,* a transaction memory area 410 is provided to store all transaction receipts in electronic form to eliminate or reduce paper receipts."  *Id.* at 12:1–4 (emphasis added), Fig. 4.  The existence of a transaction memory area corresponding to each card supports the position that the user of Pitroda can, by selecting a particular card such as an American Express card, complete a transaction using that card.  Further, upon completion of the transaction, the account information would be stored in the transaction memory area corresponding to the American Express card.  The user also could review an account summary or other details particular to the American Express card via the Figure 14 display, which would require accessing information that is specific to the American Express card.  We are not persuaded by Patent Owner's argument that transaction memory area "corresponding to each card" means "corresponding to each UET card."  Tr. 60:14–23.  The paragraph in which transaction memory area 410 is described begins:  "*Corresponding to each card*, a data area 409 is provided for transient information related to the date of issue, date of expire, credit limit, etc." and continues:  "*Also corresponding to each card*, a transaction memory area 410 is provided . . . ."  Ex. 1004, 11:65–67, 12:1–4 (emphases added).  The totality

IPR2014-00156
Patent 6,764,005 B2

of the language supports a reading that Pitroda has a transaction memory area 410 corresponding to each of the credit cards 404, bank cards 405, ID cards 406, and health cards 407 on its UET card. *Id.* at 11:39–58; Fig. 4.

Although Patent Owner argues that Pitroda does not differentiate its incoming credit card transactions, such a conclusion is based on a hypothetical presented to Petitioner's expert, and presents a strained reading of Pitroda in view of its complete disclosure. The expert's testimony cited by Patent Owner states that Pitroda's UET card could store sales receipts in the American Express records within that card, or equivalently in a part of the UET card's memory that is "just a stack of sales receipts undifferentiated by account." Ex. 2003, 164:14–165:6. The argument is misplaced because it does not diminish Pitroda's express disclosure of the use of transaction memory area 410 in a manner that "corresponds" to each card, as we have already discussed. In other words, even if information also could be stored differently, i.e., without differentiation based on accounts, that does not negate or take away from the actual disclosure of storing information, separately, for different cards. Patent Owner does not explain why the existence of possible additional configurations defeats a finding of express anticipation based on an already disclosed embodiment.

With respect to claim 5, Petitioner argues that claim 5 does not recite an "account location" and, thus, Patent Owner's argument is not applicable to claim 5. Pet. Reply 10 (citing Ex. 1001, 11:3–10). Notwithstanding this argument, Petitioner's evidence as a whole supports its argument that Pitroda nevertheless discloses an operator interface means to accept inputs from a user to select an account for the receipt, transmission, storage and

IPR2014-00156
Patent 6,764,005 B2

display of said selected account data including account information, as
discussed above.

### 3. Claim 6 – "account identifier means"

Claim 6 requires an account identifier means associated with each
account stored in said memory means for allowing the user to direct the
receipt, transmission, and display of account data including account
information through said operator interface means by reference to said
account identifier means.  Petitioner argues that Pitroda discloses account
identifier means allowing the user to direct account data through the operator
interface by reference to the account identifier means as recited in claim 6,
namely, the portion of the touch screen display for selecting each card in
Figure 13.  Pet. 24–25; Ex. 1004, Figs. 13, 14.

Patent Owner argues that Pitroda does not disclose referring to an
account identifier through an operator interface to direct receipt and storage
of account information, as required by claim 6.  PO Resp. 16.  Specifically,
Patent Owner argues that "picking an account for display and for point of
sale purchasing" is not the same thing as "picking an account identifier for
receipt and storage."  *Id.*

Petitioner argues that "the portion of the touch screen display area for
selecting each credit card in Figure 13 would constitute the account
identifier means."  Pet. Reply 13.  This account identifier means, according
to Petitioner, would allow an individual credit card to be selected for a
transaction, resulting in the receipt of transaction information that is
associated with the selected credit card.  *Id.*

Pitroda's display configurations, as depicted in Figures 13 and 14,
function as account identifier means associated with each account.  As

IPR2014-00156
Patent 6,764,005 B2

discussed above, Pitroda discloses a credit card transaction that begins with the user selecting from a UET card a service institution account, and ends with "storing the transactional information for the credit transaction in the universal electronic transaction card with respect to the service institution account." Ex. 1004, 6:41–43; Tr. 20:4–24. We are persuaded by Petitioner's reasoning that Pitroda discloses the account identifier means of claim 6.

### 4. Remaining Claim Elements; Dependent Claims 3 and 4

As discussed, we find that Petitioner has established, by a preponderance of the evidence, that Pitroda anticipates claims 1, 2, 5, and 6 as to the claim elements discussed with particularity above. We have reviewed the arguments presented in the Petition and the supporting evidence regarding the anticipation of the remaining elements of claims 1, 2, 5, and 6, which were not disputed by Patent Owner in its Response. Pet. 11–25. Petitioner further contends Pitroda discloses the subject matter recited in claims 3 and 4, each of which depends indirectly from claim 1. *Id.* at 19–20. We also have reviewed the Petition and supporting evidence presenting arguments that the additional subject matter of claims 3 and 4 is disclosed in Pitroda. *Id.* Patent Owner, in its Response, relies solely on its arguments and evidence concerning the disputed terms in claims 1, 2, 5, and 6. *See generally* PO Resp. In the Scheduling Order, we cautioned Patent Owner that any arguments for patentability not raised in the Response would be deemed waived. Paper 10, 3. After reviewing of the arguments and evidence presented concerning the remaining claim elements of claims 1, 2, 5, and 6, and dependent claims 3 and 4, we find a preponderance of the evidence establishes that Pitroda expressly discloses the remaining elements

IPR2014-00156
Patent 6,764,005 B2

of claims 1, 2, 5, and 6, and each and every limitation of dependent claims 3 and 4. We conclude that claims 1–6 are unpatentable as anticipated by Pitroda.

### C. Patent Owner's Motion to Exclude

Patent Owner filed a Motion to Exclude (Paper 23, "Mot. to Excl."), to which Petitioner responded (Paper 27, "Resp. to Mot. to Excl.") and on which Patent Owner filed a Reply (Paper 28, "Reply on Mot. to Excl."). Patent Owner's motion seeks to exclude Exhibit 1013 as not properly authenticated, as hearsay, and as irrelevant, Exhibit 1014 as irrelevant, and Exhibit 1015 as not properly authenticated and as hearsay.[3] Mot. to Excl. 1–3. The moving party has the burden of proof to establish that it is entitled to the requested relief. 37 C.F.R. § 42.20(c).

Petitioner alleges that Exhibit 1013 was not objected to prior to filing the Motion to Exclude. Resp. to Mot. to Excl. 3. Patent Owner "concedes that the basis on which it believed itself excused from the objection requirement was not sound." Reply on Mot. to Excl. 1. Patent Owner must object timely to the evidence it seeks to exclude. 37 C.F.R. § 42.64(b)(1). Once an objection is filed, a motion to exclude "must be filed to preserve any objection." *Id.* § 42.64(c). The motion to exclude must identify the prior objection. *Id.* There is no record that Patent Owner objected to Exhibit 1013 prior to filing the Motion to Exclude, as required by Rule 42.64.

---

[3] The Motion to Exclude also seeks to exclude Ex. 1016 in the IPR2014-00158 proceeding. As that document is not part of this proceeding, however, it is unsuitable for consideration here.

IPR2014-00156
Patent 6,764,005 B2

We do not rely upon Exhibits 1014 and 1015 in our present determination.  The Motion to Exclude therefore need not be decided as to these Exhibits.  Accordingly, the Motion to Exclude is *dismissed* as to Exhibits 1014 and 1015 and *denied* as to Exhibit 1013.

III.    SUMMARY

Petitioner has demonstrated, by a preponderance of the evidence, that claims 1–6 of the '005 patent are unpatentable as anticipated by Pitroda. This is a Final Written Decision of the Board under 35 U.S.C. § 318(a).

IV.    ORDER

For the reasons given, it is

ORDERED that Patent Owner's Motion to Exclude is *dismissed* as to Exhibits 1014 and 1015 and *denied* as to Exhibit 1013;

FURTHER ORDERED that claims 1–6 of the '005 patent are *unpatentable*; and

FURTHER ORDERED that parties to the proceeding seeking judicial review of this final written decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2014-00156
Patent 6,764,005 B2

FOR PETITIONER:
Erika Arner
Aaron Capron
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
erika.arner@finnegan.com
aaron.capron@finnegan.com


FOR PATENT OWNER:
Robert P. Greenspoon
Joseph C. Drish
FLACHSBART & GREENSPOON, LLC
rpg@fg-law.com
jcd@fg-law.com